Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiffs,
Angelena Sandifor, Brenda Blandon

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELENA SANDIFOR, BRENDA BLANDON | Case No. |
| Plaintiffs, | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983** |
| v. | **DEMAND FOR JURY TRIAL** |
| COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY SHERIFF JAMES McDONNELL, in his individual and official capacity, DEPUTY GIANCARLO SCOTTI, in his individual and official capacity, and DOES 1 TO 10, | |
| Defendants. | |

## INTRODUCTION

1. While employed by the County of Los Angeles as a Sheriff's deputy, and while working at the Century Regional Detention Center, defendant Deputy Giancarlo Scotti sexually harassed, abused and assaulted female inmates that he had the duty to protect. Plaintiffs Angelena Sandifor and Brenda Blandon are two of Deputy Scotti's victims.

2.     In or around September 11, 2017, Deputy Scotti sexually assaulted Plaintiff Angelena Sandifor by forcing her to orally copulate him from her cell.

3.     On or around November 25, 2016, Deputy Scotti sexually harassed and assaulted Plaintiff Brenda Blandon by ordering her to disrobe while in her cell.

4.     On or around December 2, 2016, Deputy Scotti groped Plaintiff Brenda Blandon's breast while she was isolated and alone with him in the elevator.

5.     On September 13, 2017, Deputy Scotti was arrested on suspicion of sexually assaulting at least other two women inmates at the Century Regional Detention Facility. Specifically, the accusations which compelled Deputy Scotti's arrest included rape under color of authority and oral copulation under color of authority.

6.     On February 21, 2018, the Los Angeles County District Attorney's Office filed a felony complaint, charging Deputy Scotti with sexually assaulting six female inmates housed at the Lynwood facility. Reference is made to the *People of the State of California v. Giancarlo Scotti*; Case No. BA465694. Deputy Scotti along with LASD and the County of Los Angeles were previously sued in relation to sexual assaults committed by Deputy Scotti. Reference is made to *Matthews v. County of Los Angeles, et al (Case No. 17-CV-7908-DMG)*.

7.     This civil rights action seeks compensatory and punitive damages from defendants for violating rights under the United States Constitution in connection with the sexual assault of plaintiffs by Deputy Scotti. In sexually assaulting and abusing the two plaintiffs and other victims, Deputy Scotti exploited opportunities that were provided by the County's deliberate indifference to the safety of the two plaintiffs and other victims. Deputy Scotti's supervisors and co-workers, together with the County of Los Angeles and the Los Angeles County Sheriff's Department, and Sheriff McDonnell, failed to respect and enforce key policies designed to prevent and deter sexual abuse, failed to train their employees regarding those policies, failed to discipline their employees for violating those policies, maintained vague and unclear policies, and maintained customs and practices that deviated from written policy.

**JURISDICTION AND VENUE**

8.    This case arises under 42 U.S.C. § 1983. Accordingly, subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. Jurisdiction for the claims based on California law is founded on 28 U.S.C. § 1367(a), which provides this court with supplemental jurisdiction over state law claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.    Plaintiffs' claims arise out of a course of conduct involving officials for the County of Los Angeles, in the County of Los Angeles, State of California, and within this judicial district. Venue is proper in this district under 28 U.S.C. § 1391(b), as this is the district in which a substantial part of the events or omissions giving rise to the claims occurred.

**PARTIES**

10.    Plaintiff Angelena Sandifor is an adult woman competent to sue. At all relevant times, Plaintiff Sandifor was incarcerated at the Century Regional Detention Facility ("CRDF"), a women's jail located at 11705 Alameda Street, Lynwood, CA 90059. Plaintiff Sandifor was last released from the CRDF on August 30, 2018.

11.    Plaintiff Brenda Blandon is an adult woman competent to sue. At all relevant times, Plaintiff Blandon was incarcerated at the Century Regional Detention Facility ("CRDF"), a women's jail located at 11705 Alameda Street, Lynwood, CA 90059. Plaintiff Blandon was last released from the CRDF on or around December 9, 2016.

12.    Defendant County of Los Angeles ("County") is a legal and political entity established under the laws of the State of California, with all of the powers specified and necessarily implied by the Constitution and the laws of the State of California and exercised by various government agents and officers. In this case, the County acted through its agents, employees, and servants, including the policymakers for defendant the Los Angeles County Sheriff's Department ("LASD"), and through defendant James

1 McDonnell ("McDonnell"), the Los Angeles County Sheriff. Defendant McDonnell is
2 sued in his official and individual capacity.

3      13.    At all relevant times, Defendants County, LASD, McDonnell and each of
4 them, possessed the power and authority to adopt policies and prescribe rules,
5 regulations, and practices affecting all facets of the training, supervision, control,
6 employment, assignment and removal of individual members of the LASD, including
7 those individuals charged with protecting the health and safety of detainees and
8 arrestees at County detention facilities, including plaintiffs Angelena Sandifor and
9 Brenda Blandon, and to assure that said actions, policies, rules, regulations, customs,
10 practices and procedures of the LASD and its employees and agents complied with the
11 laws and constitutions of the United States and the State of California. At all relevant
12 times, the County was the employer of each of the individually named defendants, and
13 the CRDF was a County-run facility, operated by the LASD.

14      14.    Defendant Deputy Giancarlo Scotti ("Deputy Scotti") is a deputy sheriff
15 for the LASD. At all relevant times, Deputy Scotti was a duly authorized employee and
16 agent of the County of Los Angeles, subject to oversight and supervision by the
17 County's elected and non-elected officials, and was acting under color of law and
18 within the course and scope of his duties as a sheriff deputy for the LASD and with
19 complete authority and ratification of the principal, County. In committing the acts
20 alleged herein, Deputy Scotti acted within the scope of his respective employment and
21 under color of law. Deputy Scotti is sued in both his official and individual capacities.

22      15.    The true names of defendants Does 1 through 10 are presently unknown
23 to Plaintiffs, who therefore sue each of these defendants by such fictitious names; but
24 upon ascertaining the true identity of a defendant Doe, Plaintiffs will amend this
25 complaint or seek leave to do so by inserting the true and correct name in lieu of the
26 fictitious name. Plaintiffs are informed and believes, and on the basis of such
27 information and belief alleges that each defendant Doe herein is in some manner
28 responsible for the injuries and damages alleged herein. Each individually named Doe

1  defendant, like each individually named defendant, acted under color of law and within

2  the scope of his or her agency and employment with the County and LASD. Each Doe

3  is sued in both his/her official and individual capacities.

4  **FACTS OF THE SANDIFOR INCIDENT**

5       16.    Plaintiff Angelena Sandifor repeats and re-alleges each and every

6  allegation in paragraphs 1 through 15 of this complaint with the same force and effect

7  as if fully set forth herein.

8       17.    Plaintiff Angelena Sandifor was arrested and placed into the custody of

9  the LASD sometime in or near November 2016.

10       18.    During her time at the CRDF in 2017, Sandifor came into contact with

11  Deputy Scotti. In particular, on or around September 10, 2017, Sandifor first met

12  Deputy Scotti at the CRDF medical clinic. Sandifor was given a blanket and she asked

13  Deputy Scotti whether she could keep it and he replied something to the effect of, "you

14  can pay me for it some other way." Later that day, after Sandifor had left the clinic,

15  Deputy Scotti told Sandifor, "don't go to sleep right now." Around this time, Sandifor

16  saw that Deputy Scotti greeted another LASD deputy working in "the bubble" of her

17  module (2100) and block (block 1) who was ostensibly responsible for watching

18  surveillance video. This LASD employee was in a green uniform, was an older, bald

19  black man, but Sandifor does not know his name.

20       19.    Later that day, after Sandifor had been returned to her cell, Deputy Scotti

21  walked up to Sandifor's cell and gave her toilet paper through the metal slot on the

22  door. At this point he told her, "let me see your titties!" Shocked and scared, Sandifor

23  declined and Deputy Scotti walked away.

24       20.    Later that same evening, sometime around 1 a.m. on September 11, 2017,

25  Deputy Scotti returned to the area around Sandifor's cell. While standing in eye-shot of

26  Sandifor's cell, but not directly in front of the cell, Deputy Scotti motioned to get

27  Sandifor's attention and then unzipped his pants and pulled out his penis. In response,

28  Sandifor brushed her hand away through the open slot to the door of her cell, gesturing

for Deputy Scotti to stop and to go away. Instead, Deputy Scotti approached Sandifor's cell and demanded to touch her breasts.

21. Upon hearing Deputy Scotti's demand, Sandifor became extremely frightened. As a fourteen-year-old, Sandifor had been sexually assaulted and she consequently suffers from anxiety and depression. Deputy Scotti's repeated and ramped-up sexual advances scared Sandifor, especially because he was so persistent, so open, and so bold. Despite being a victim of sexual assault, Sandifor had not been questioned or screened by any County or LASD employee upon entering the CRDF regarding her past sexual victimization. Indeed, before September 12, 2017, the entity defendants had made no effort to determine whether Sandifor had a history of sexual abuse, nor had she been assessed whatsoever regarding her risk of sexual victimization.

22. Deputy Scotti soon approached Sandifor's cell and demanded to touch her "tits." Deputy Scotti then felt Sandifor's bare breasts through the slot of the cell door. Deputy Scotti then pulled out his penis, put it through the slot of the cell door and Sandifor acceded to his pressure by orally copulating him. At one point during this ordeal for Sandifor, Deputy Scotti told her something to the effect of, "I'm going to bust in your mouth." When Deputy Scotti finished, Sandifor walked to toilet, tried to clean herself up, and then went to sleep.

23. On September 13, 2017, Deputy Scotti was arrested for sexually assaulting inmates at the CRDF. Sandifor heard the news and came forward to a LASD employee working at the CRDF. Investigators went to Sandifor's cell and inspected her items, even bringing a blacklight into the cell. It was clear that Sandifor had been identified as one of Deputy Scotti's victims. In the following days and weeks, on multiple occasions, Sandifor met with LASD Internal Affairs officers. On at least two occasions Sandifor met with Lieutenant Stone and a female officer and was shown a video of the incident, lasting around eight minutes. On another occasion, Sandifor met with a Lieutenant Christian and a Sergeant Colon, and she herself was videotaped while being interviewed. During at least one of these meetings Sandifor was able to identify Deputy

Scotti, circling a photo of him that the officers showed her. Sandifor experienced depression and anxiety through this time period. Sandifor was placed on psychotropic medications that she had never taken before; she felt bullied about this and does not remember much of this time period when she was heavily medicated.

24. Despite being identified as a victim, Sandifor was not protected from ongoing abuse, and instead was retaliated against for having complained of her victimization. Sometime in September of 2017 two Does, LASD Deputies, spoke to Sandifor and referenced the sexual assault, one said something to the effect of, "wouldn't you want another partner like that," and then both laughed. Sandifor was placed in sustained fear and anxiety, and felt that she was unsafe and could not trust anyone at the CRDF.

25. Sandifor suffered further psychological abuse and retaliation. Around July 2018, having long been identified as a victim of Deputy Scotti's a Doe defendant, an LASD Deputy, told her in reference to Deputy Scotti, "don't act like you didn't like it," and "I bet you wanted to take it in the ass." Again, Sandifor was placed in sustained fear and anxiety, and felt that she was unsafe and could not trust anyone at the CRDF. To her great relief, Sandifor was released from the CRDF on August 30, 2018.

### FACTS OF THE BLANDON INCIDENT

26. Plaintiff Brenda Blandon repeats and re-alleges each and every allegation in paragraphs 1 through 15 of this complaint with the same force and effect as if fully set forth herein.

27. Plaintiff Brenda Blandon was arrested and placed into the custody of the LASD on or around November 21, 2016. Blandon was detained at the CRDF, until her release on or around December 9, 2016.

28. On or about November 25, 2016, during the evening and after dinner, Deputy Scotti walked by Blandon's cell at the CRDF and stopped to talk to her. Blandon felt singled out and that the subject of the conversation was not just small talk. In fact, Deputy Scotti started the conversation by ordering Blandon to disrobe. The

1   verbal command was accompanied by a very forceful motion and head gesture, which

2   suggested a "do it right now" type of command. Blandon, shocked and afraid,

3   complied and disrobed to where she was naked in her cell. Deputy Scotti, replied,

4   "looks good," and walked away.

5       29.   Brenda Blandon's second encounter with Deputy Scotti came just days

6   later. On or about December 2, 2016, Blandon was in the laundry area where she

7   encountered Deputy Scotti. This time, Deputy Scotti had communicated a desire to

8   want to "fuck," and proceeded to scour the area for a place that was free of potential

9   video surveillance. Stunned and afraid, Blandon just stood and watched Deputy Scotti,

10  wondering what he would do next. When it was apparent that Deputy Scotti was

11  uncomfortable with their current location and potential for detection, he ordered

12  Blandon to follow him into the staff elevator, located on the first floor near, working

13  module 1700. Blandon afraid and alone, assented to his commands and followed

14  Deputy Scotti into the elevator. Once in the elevator, Deputy Scotti forcefully grabbed

15  Blandon's breast. Deputy Scotti, ordered Blandon to return to her cell.

16      30.   The two had no further contact while Blandon was incarcerated at the

17  CRDF. However, shortly upon Blandon's release from custody, Deputy Scotti,

18  contacted Blandon on social media and messaged her, "do you want to fuck." Blandon

19  did not respond to that message and has had no further contact with Deputy Scotti.

20      31.   After Blandon's release, and on or about a date Plaintiff cannot recall,

21  Plaintiff's mother, Zeneyda Walla, was contacted by Sergeant Bernal of LASD who

22  indicated that he wished to speak with Blandon regarding the assaults. Ms. Blandon

23  subsequently provided law enforcement with an accounting of the sexual assaults and

24  was also shown video surveillance footage of the sexual assault which occurred on or

25  about December 2, 2016 in the elevator.

26      32.   On January 4, 2018, Kelly Adler, acting Captain of LASD's Internal

27  Criminal Investigations Bureau, provided Blandon with U- Nonimmigrant Status

28  Certification (USCIS Form I-918), commonly referred to as a U-Visa, certifying

1 | Blandon as a victim in a criminal investigation, specifically, a victim of Deputy Scotti's,
2 | referring to the sexual assaults perpetrated onto Blandon by Deputy Scotti in 2016.

3 | **FACTS RELATED TO THE SANDIFOR AND BLANDON INCIDENTS**

4 |     33.    Upon information and belief, Plaintiff Sandifor and Plaintiff Blandon
5 | (collectively referred to as "Plaintiffs") allege that before either plaintiff was sexually
6 | assaulted by Deputy Scotti, that the County, LASD and McDonnell were on notice that
7 | other female inmates had complained about sexual assaults and sexually inappropriate
8 | behavior by Deputy Scotti. Furthermore, Plaintiffs allege that Deputy Scotti had been
9 | put on some form of employment probation by the County before he sexually
10 | assaulted Plaintiffs. Nonetheless, the County, LASD and McDonnell, and certain Does,
11 | permitted Deputy Scotti to work at a women's jail, permitting him the regular, daily
12 | task of supervising women inmates, which oftentimes necessitated that he be alone
13 | with women inmates.

14 |     34.    Defendant McDonnell, and certain Does, other LASD supervising
15 | officers, were on notice that Deputy Scotti was engaging in conduct in violation of
16 | written policy, including policies deterring sexual abuse and impropriety.

17 |     35.    Defendant McDonnell, and certain Does, other LASD supervising
18 | officers, failed to act to prevent Deputy Scotti from engaging in this conduct. Since the
19 | written policies were designed, at least in part, to prevent and deter sexual abuse,
20 | McDonnell, and other LASD supervising officers knew, or reasonably should have
21 | known, that the failure to enforce these policies heightened the danger of sexual abuse
22 | of female inmates by Deputy Scotti.

23 |     36.    As a result of McDonnell, and certain Does' (other LASD supervising
24 | officers) failure to supervise Deputy Scotti, despite being put on notice, Deputy Scotti
25 | was not subject to timely LASD discipline and instead permitted the opportunity to
26 | victimize female inmates, such as Plaintiffs.

27 |     37.    Further evidence exists that the County, LASD, and McDonnell are not
28 | meeting their constitutional and statutory obligations and are not adequately protecting

women inmates from sexual assault. The Prison Rape Elimination Act of 2003 ("PREA"), currently codified at 34 U.S.C. § 30301, et seq., mandates that correctional facilities protect inmates from sexual assault. A subsequently promulgated federal rule (28 C.F.R. 115.401) requires that agencies ensure that each of their correctional facilities is audited once every three years.[1] At the time of the sexual assaults of Plaintiffs, the CRDF had not undergone such a timely audit.  Indeed, no jail operated by the County and LASD had undergone a PREA-related audit within three years of Deputy Scotti's sexual assaults of the Plaintiffs and numerous other women.

38.    Only after the sexual assaults of Plaintiffs did defendants permit a PREA-related audit of the CRDF. The preliminary report of federal auditors found many deficiencies at CRDF regarding the prevention of rape and sexual assault, including a lack of screening to assess inmates' risk of sexual victimization, and a weak grievance system that adequately protects inmates who complain about sexual abuse from retaliation.[2]

39.    If Deputy Scotti had been adequately trained and supervised prior to the sexual abuse of the Plaintiffs, if his errant behavior had been timely investigated, if he had been timely punished as a result, and if the CRDF had been timely and properly audited, and if the CRDF was compliance with federal standards preventing prison rape, then the sexual abuse of the Plaintiffs in this case could have been averted.

## DAMAGES

40.    As a direct and proximate result of aforesaid acts and omissions, and the customs, practices, policies and decisions of the defendants alleged in this complaint, Plaintiffs suffered and will continue to suffer great emotional, mental and physical pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause, Plaintiffs to sustain general damages in a sum to be determined at

---

[1] 28 C.F.R. Part 115, *available at* http://www.prearesourcecenter.org/sites/default/files/library/2012-12427.pdf

[2] Maya Lau, "L.A. County women's jail lags behind national standards on preventing sexual abuse, report finds." L.A. TIMES, April 1, 2018, *available at* http://www.latimes.com/local/lanow/la-me-lasd-prea-20180401-story.html

1 | trial.

2 |     41.    As a direct and proximate result of the aforesaid acts, omissions, customs,
3 | practices, policies and decisions of the aforementioned Defendants, Plaintiffs suffered
4 | the denial of their fundamental constitutional rights guaranteed by the First, Fourth,
5 | Eighth and Fourteenth Amendments of the United States Constitution, which have
6 | caused Plaintiffs to sustain damages in a sum to be determined at trial.

7 |     42.    As a further direct and proximate result of the aforesaid acts, omissions,
8 | customs, practices, policies and decisions of the aforementioned Defendants, Plaintiffs
9 | incurred and/or will continue to incur medical expenses, including psychological
10 | treatment.

11 |     43.    As a further direct and proximate result of the aforesaid acts, omissions,
12 | customs, practices, policies and decisions of the aforementioned Defendants, Plaintiffs
13 | suffered past and future losses of income that have caused her to sustain economic
14 | damages in a sum to be determined at trial.

15 |     44.    Deputy Scotti, and individual Doe defendants, excluding Defendants
16 | County and LASD, acted in a manner that was willful, wanton, malicious and
17 | oppressive, with reckless disregard of or in deliberate indifference to and with the
18 | intent to deprive Plaintiffs of their constitutional rights, and did in fact violate the
19 | aforementioned rights, entitling Plaintiffs to exemplary and punitive damages in an
20 | amount to be proven at the trial in this matter.

21 |

22 | ### FIRST CLAIM FOR RELIEF
23 | ### Violation of Civil Rights – 42 U.S.C. § 1983
24 | (First Amendment – Plaintiff Sandifor Against All Defendants)

25 |     45.    Plaintiff Sandifor incorporates by reference each and every allegation
26 | contained in the foregoing paragraphs as if re-alleged herein.

27 |     46.    At all relevant times, Plaintiff Sandifor was incarcerated at the CRDF, a
28 | jail operated by the County. At all relevant times Plaintiff Sandifor was under the direct

1 | supervision and control of their jailers, deputies of the LASD.

2 |      47.   The entity defendants, individual defendants, and Doe defendants, while
3 | acting under color of law, deprived Plaintiff Sandifor of her civil rights under the First
4 | Amendment by acting and/or allowing each other to act in a threatening or violent
5 | manner and otherwise engaging in conduct that inhibited Plaintiff's freedom of speech
6 | and right to petition for redress of grievances and to complain about their treatment
7 | while in custody, and that such actions undertaken by defendants would chill a person
8 | of ordinary firmness from continuing to engage in freedom of speech.

9 |      48.   The above acts and omissions, while carried out under color of law, have
10 | no justification or excuse in law, and instead constitute a gross abuse of governmental
11 | authority and power that shock the conscience. They are fundamentally unfair, arbitrary
12 | and oppressive, and unrelated to any activity in which governmental officers may
13 | appropriately and legally undertake in the course of protecting persons, or ensuring
14 | civil order. The above acts and omissions were consciously chosen from among various
15 | alternatives.

16 |      49.   The conduct of entity defendants, individual defendants, and Doe
17 | defendants was willful, wanton, malicious, or done with reckless disregard for the rights
18 | and safety of Plaintiff Sandifor. For instance, Plaintiff Sandifor had already been
19 | identified as a victim of Deputy Scotti when Doe defendant, an LASD Deputy, told her
20 | in reference to Deputy Scotti, "don't act like you didn't like it," and "I bet you wanted
21 | to take it in the ass."

22 |      50.   Plaintiff Sandifor specifically alleges that Defendants' complained of acts
23 | and/or omissions were within each of their control, and within the feasibility of each of
24 | them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts
25 | and injuries complained of herein by Plaintiff.

26 |      51.   As a direct and proximate result of the aforesaid acts, omissions, customs,
27 | practices, policies and decisions of the aforementioned defendants, Plaintiff Sandifor
28 | suffered extreme and severe mental anguish, and were injured as alleged above,

1  entitling each of them to recover compensatory and punitive damages (excepts as to

2  the entity defendants) according to proof.

3  **SECOND CLAIM FOR RELIEF**

4  **Violation of Civil Rights – 42 U.S.C. § 1983**

5  (Fourth Amendment– Plaintiffs Against Deputy Scotti)

6  52.  Plaintiffs incorporate by reference each and every allegation contained in

7  the foregoing paragraphs as if re-alleged herein.

8  53.  At all relevant times, Plaintiffs were incarcerated at the CRDF, a jail

9  operated by the County. At all relevant times Plaintiffs were under the direct

10  supervision and control of their jailers, deputies of the LASD.

11  54.  Defendant Deputy Scotti, while acting under color of law, sexually

12  assaulted Plaintiffs and engaged in the conduct described above, and thereby deprived

13  Plaintiffs of their civil rights under the Fourth Amendment to the United States

14  Constitution.

15  55.  The force used by Deputy Scotti upon Plaintiffs while sexually assaulting

16  each of them while in custody was harmful, unwanted, and excessive.

17  56.  The sexual assaults of Plaintiffs by Deputy Scotti, and Deputy Scotti's

18  conduct as described above, were unreasonable, unjustified, and offensive to human

19  dignity.

20  57.  The conduct of Deputy Scotti was willful, wanton, malicious, or done

21  with reckless disregard for the rights and safety of Plaintiffs and therefore warrants the

22  imposition of exemplary and punitive damages.

23  58.  As a result of the conduct of Deputy Scotti, Plaintiffs were harmed.

24

25  **THIRD CLAIM FOR RELIEF**

26  **Violation of Civil Rights – 42 U.S.C. § 1983**

27  (Eighth Amendment –Plaintiffs Against Deputy Scotti)

28  59.  Plaintiffs incorporate by reference each and every allegation contained in

1  the foregoing paragraphs as if re-alleged herein.

2      60.   At all relevant times, Plaintiffs were incarcerated at the CRDF, a jail
3  operated by the County.

4      61.   At all relevant times Plaintiffs were under the direct supervision and
5  control of their jailers, deputies of the LASD.

6      62.   Defendant Deputy Scotti, while acting under color of law, sexually
7  assaulted Plaintiffs and engaged in the conduct described above, and thereby deprived
8  Plaintiffs of their civil rights under the Eighth Amendment to the United States
9  Constitution.

10     63.   The force used by Deputy Scotti upon Plaintiffs while sexually assaulting
11 each of them while in custody was harmful, unwanted, and excessive.

12     64.   The sexual assaults of Plaintiffs by Deputy Scotti, and Deputy Scotti's
13 conduct as described above, were unreasonable, unjustified, and offensive to human
14 dignity. It was also with deliberate indifference to the rights and safety of Plaintiffs.

15     65.   The conduct of Deputy Scotti was willful, wanton, malicious, sadistic, and
16 done with reckless disregard for the rights and safety of Plaintiffs and therefore
17 warrants the imposition of exemplary and punitive damages.

18     66.   As a result of the conduct of Deputy Scotti, Plaintiffs were harmed.

19

20                    **FOURTH CLAIM FOR RELIEF**

21            **Violation of Civil Rights – 42 U.S.C. § 1983**

22           (Fourteenth Amendment –Plaintiffs Against Deputy Scotti)

23     67.   Plaintiffs incorporate by reference each and every allegation contained in
24 the foregoing paragraphs as if re-alleged herein.

25     68.   At all relevant times, Plaintiffs were incarcerated at the CRDF, a jail
26 operated by the County. At all relevant times Plaintiffs were under the direct
27 supervision and control of their jailers, deputies of the LASD.

28     69.   Defendant Deputy Scotti, while acting under color of law, sexually

                              14

1   assaulted Plaintiffs and engaged in the conduct described above, and thereby deprived

2   Plaintiffs of their civil rights under the Fourteenth Amendment to the United States

3   Constitution.

4       70.     The force used by Deputy Scotti upon Plaintiffs while sexually assaulting

5   each of them while in custody was harmful, unwanted, and excessive.

6       71.     The sexual assault of Plaintiffs by Deputy Scotti, and Deputy Scotti's

7   conduct as described above, was unreasonable, unjustified, and offensive to human

8   dignity. It was also with deliberate indifference to the rights and safety of Plaintiffs.

9       72.     The conduct of Deputy Scotti was willful, wanton, and done with reckless

10  disregard for the rights and safety of Plaintiffs and therefore warrants the imposition of

11  exemplary and punitive damages.

12      73.     As a result of the conduct of Deputy Scotti, Plaintiffs were harmed.

13      74.     Plaintiffs specifically allege that Defendants' complained of acts and/or

14  omissions, were within each of their control, and within the feasibility of each of them,

15  to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and

16  injury complained of herein by Plaintiffs.

17

18  ## FIFTH CLAIM FOR RELIEF

19  ### Violation Due Process – 42 U.S.C. § 1983

20  (Fourteenth Amendment –Plaintiffs Against Deputy Scotti)

21      75.     Plaintiffs incorporate by reference each and every allegation contained in

22  the foregoing paragraphs as if re-alleged herein.

23      76.     At all relevant times, Plaintiffs were incarcerated at the CRDF, a jail

24  operated by the County. At all relevant times Plaintiffs were under the direct

25  supervision and control of their jailers, deputies of the LASD.

26      77.     Plaintiffs had a cognizable interest under the Due Process Clause of the

27  Fourteenth Amendment of the United States Constitution to be free from state actions

28  that deprive them of life, liberty, or property in such a matter as to shock the

conscience.

78.     Defendant Deputy Scotti acting under color of law and within the course and scope of his employment by the County and LACPD, sexually assaulted Plaintiffs and engaged in the conduct described above, and thereby deprived Plaintiffs of their civil rights under the Fourteenth Amendment to the United States Constitution.

79.     The aforementioned actions of Deputy Scotti, along with undiscovered conduct, shock the conscience, in that he acted with deliberate indifference to the constitutional rights of Plaintiffs.

80.     The acts of Deputy Scotti violated the substantive due process rights of Plaintiffs.

81.     The acts or omissions of Deputy Scotti caused harm to Plaintiffs.

82.     The conduct of Deputy Scotti was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiffs and therefore warrants the imposition of exemplary and punitive damages.

83.     Plaintiffs specifically allege that Defendants' complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff.

### SIXTH CLAIM FOR RELIEF

### Municipal Liability –Unconstitutional Custom, Practice, or Policy

### 42 U.S.C. § 1983

(Plaintiffs Against County, LASD, McDonnell, and Certain Does)

84.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

85.     The individual defendants and Doe defendants acted under color of law and within the course and scope of their employment by the County and LASD.

86.     The individual defendants and Doe defendants deprived Plaintiff Sandifor

of her rights under the First Amendment, and Deputy Scotti deprived both Plaintiffs of their rights under the Fourth, Eighth, and Fourteenth Amendments, as alleged above.

87.    Plaintiffs are informed and believe, and thereon alleges that, at all times herein mentioned, defendants County, LASD, the relevant policy maker, McDonnell, and relevant County officials, unnamed certain Does (hereinafter referred to collectively as the entity defendants) maintain or tolerate unconstitutional customs, practices, and policies that facilitated the deprivation of Plaintiffs' rights under the First, Fourth, Eighth, and Fourteenth Amendment, as alleged above.

88.    The policies, customs, and practices described above are also evidenced by the victimization of Plaintiffs and other female inmates at the CRDF by Deputy Scotti. Entity defendants' non-compliance with PREA standards, including the failure to timely audit the CRDF, is further evidence of entity defendants' systematic failure to comply with their constitutional obligations.

89.    Entity defendants had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Indeed, entity defendants knew of their obligations under PREA and still failed to submit to a federal audit and still failed to meet baseline federal standards at the CRDF. Said officials acted with deliberate indifference to the foreseeable effects and consequences of these policies, practices and customs with respect to the constitutional rights of Plaintiffs and other female inmates similarly situated.

90.    As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiffs were injured and sustained damages as alleged above. Accordingly, Plaintiffs seek compensatory damages from all the entity defendants, and punitive damages from defendant McDonnell, in his individual capacity only.

///

**SEVENTH CLAIM FOR RELIEF**

**Municipal Liability –Inadequate Training/Policy of Inaction**

**42 U.S.C. § 1983**

(Plaintiffs Against County, LASD, McDonnell and Certain Does)

91.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

92.    At all times mentioned herein and prior thereto, defendants County, LASD, McDonnell and certain Does (hereinafter referred to collectively as the entity defendants) had a duty to train, instruct, supervise, discipline and/or correct their subordinates to assure they respected and did not violate constitutional and statutory rights of inmates, and to objectively investigate violations of women prisoners' rights, including, but not limited to, the right to be free from sexual abuse, the right to be safe and protected from injury while in defendants' custody, and the right to speak to officials about sexual abuse without retaliation under the First, Fourth, Eight and Fourteenth Amendments to the U.S. Constitution.

93.    Plaintiffs are informed and believe, and thereupon allege, that prior to the incident alleged herein, defendants McDonnell and certain Does facilitated, permitted, ratified and/or condoned similar acts of sexual abuse of female inmates by male Sheriff's deputies, and were deliberately indifferent to the health and safety of inmates in general and Plaintiffs in particular. Said defendants knew, or should have reasonably knowns, of this practice, pattern or custom of constitutional violations by the deputies they supervised, and additionally, of the existence of certain facts and situations that created the potential of unconstitutional acts, and had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to other persons, but failed to do so.

94.    The training provided by the County, LASD, and the relevant policy maker, Sheriff McDonnell, and relevant County officials, and certain Does was not adequate to train their sheriff deputies and other jail staff to handle the usual and

1 recurring situations with which they must deal. As evidenced by the numerous
2 instances of female inmates other than Plaintiffs who were sexually assaulted by male
3 deputies, the entity defendants did not adequately train their officers and staff to
4 prevent, deter, detect, and avoid sexual abuse of female inmates at the CRDF – and
5 were on notice of such.

6     95.    The entity defendants maintained a policy and practice of inaction with
7 respect to the violation of policies designed to prevent or deter sexual abuse of female
8 inmates. LASD officers who engaged in suspicious behavior, or behavior that violated
9 written policy, were inadequately disciplined or otherwise not penalized in connection
10 with sexual or otherwise inappropriate behavior towards female inmates. The entity
11 defendants were deliberately indifferent to the obvious consequences of their failure to
12 train their officers and staff adequately. Entity defendants' non-compliance with PREA
13 standards, including the failure to timely audit the CRDF, is further evidence of entity
14 defendants' systematic failure to comply with their constitutional obligations.

15     96.    As a result thereof, Plaintiffs' rights under the First, Fourth, Eight and
16 Fourteenth Amendments to the U.S. Constitution were violated. As a further result
17 thereof, Plaintiffs sustained the injuries and damages alleged herein.

18     97.    The individual defendants and Doe defendants acted under color of law
19 and within the course and scope of their employment by the County and LASD.

20     98.    As a direct and proximate result of the aforesaid acts, omissions, customs,
21 practices, policies and practice of inaction of the aforementioned defendants, Plaintiffs
22 were injured and sustained damages as alleged above. Accordingly, Plaintiffs seek
23 compensatory damages from all the entity defendants

24     99.    The conduct of the individual defendants mentioned herein, in their
25 individual capacities, was intentional, malicious, willful, wanton and in reckless
26 disregard of Plaintiffs' conditional rights, and/or grossly negligent as this conduct
27 shocks the conscience and is fundamentally offensive to a civilized society, so as to
28 justify the imposition of punitive damages against these defendants.

**EIGHTH CLAIM FOR RELIEF**

**Failure to Intervene to Prevent Civil Rights Violations – 42 U.S.C. §§ 1983**

(Plaintiffs Against Certain Individual Doe Defendants)

100.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

101.   At all times relevant, certain individual Doe defendants were present and were charged with the constitutional duties of protection of protection of Plaintiffs and were charged with the duty to not knowingly, with wanton disregard, cause their life, health and safety to be placed in danger by intentionally and/or deliberately ignoring the known dangers to Plaintiffs posed by Deputy Scotti.

102.   Each said defendant had ample and reasonable sufficient time and opportunity to so intervene and prevent Plaintiffs' injuries, and were compelled to do so as a LASD deputy and/or employee under the laws of the state of California and United States Constitution. In deliberate indifference to the welfare of Plaintiffs, each said defendant intentionally and with deliberate indifference to the civil rights of Plaintiffs, refrained from intervening in the acts leading to Plaintiffs' injuries. Indeed, entity defendants knew of their obligations under PREA and still failed to submit to a federal audit and still failed to meet baseline federal standards at the CRDF.

103.   As a result thereof, Plaintiffs' rights under the First, Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution were violated. As a result thereof, Plaintiffs sustained the injuries and damages alleged herein.

104.   The conduct of the individual Doe defendants mentioned herein was intentional, malicious, willful, wanton and in reckless disregard of Plaintiffs' constitutional rights and/or grossly negligent in that this conduct shocks the conscience and is fundamentally offensive to a civilized society, so as to justify the imposition of punitive damages on the individual Doe defendants.

# NINTH CLAIM FOR RELIEF

## Violation of Civil Rights – 42 U.S.C. §§ 1983, 1988

## Conspiracy to Violate Civil Rights

(Against All Individual County Defendants)

105.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

106.   This cause of action arises under United States Code, Title 42, Sections 1983 and 1988, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege or immunity secured to each of them by the First, Eighth and Fourteenth Amendments to the United States Constitution.

107.   Defendants Deputy Scotti, McDonnell, and Does 1-10, and each of them:

(a) had a joint and simultaneous duty to make sure that Plaintiffs were not sexually assaulted;

(b) had joint and simultaneous knowledge that Plaintiffs were at risk of being sexually assaulted by Deputy Scotti;

(c) with such duty, knowledge and a meeting of the minds, took action at the same time and in the same place to collaborate to refuse to protect Plaintiffs from Deputy Scotti's sexual assaults. Thus, forming a 'pact of denial' such that for the months that Plaintiffs was subject to Deputy Scotti's sexual assaults – after the individual defendants had been alerted to the danger Deputy Scotti posed to Plaintiffs – not a single one of them did anything to intervene on Plaintiffs' behalf or prevent the sexual assaults of Plaintiffs;

(d) acted as described herein above, in conspiracy with, and with the agreement permission, ratification, and approval of, each other to violate Plaintiffs' civil rights as stated herein.

108.   As a direct and proximate result of the aforementioned acts, omissions and deliberate indifference of each of the defendants, Plaintiffs were harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows against defendants:

1.    General and compensatory damages in an amount according to proof;

2.    Special damages in an amount according to proof;

3.    Exemplary and punitive damages against each individual and Doe defendant, but not against the County or LASD, in amounts according to proof;

4.    Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and

5.    Such other relief as may be warranted or as is just and proper.


**LAW OFFICES OF ERIN DARLING**

DATED:  August 31, 2018


By:    _/s/ Erin Darling_
              Erin Darling
              Attorney for Plaintiffs,
              ANGELENA SANDIFOR
              BRENDA BLANDON


**LAW OFFICES OF JUSTIN STERLING**

DATED:  August 31, 2018


By:    _/s/ Justin Sterling_
              Justin Sterling
              Attorney for Plaintiffs,
              ANGELENA SANDIFOR
              BRENDA BLANDON

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

Plaintiff Angelena Sandifor and Plaintiff Brenda Blandon hereby demand trial by jury on all issues so triable.

**LAW OFFICES OF ERIN DARLING**

DATED:  August 31, 2018

By:    */s/ Erin Darling*
          Erin Darling
          Attorney for Plaintiffs,
          ANGELENA SANDIFOR
          BRENDA BLANDON

**LAW OFFICES OF JUSTIN STERLING**

DATED:  August 31, 2018

By:    */s/ Justin Sterling*
          Justin Sterling
          Attorney for Plaintiffs,
          ANGELENA SANDIFOR
          BRENDA BLANDON