Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiffs,
Angelena Sandifor, Brenda Blandon, Jamie Utterback

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELENA SANDIFOR, BRENDA BLANDON, JAMIE UTTERBACK<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY SHERIFF JAMES McDONNELL, in his individual and official capacity, DEPUTY GIANCARLO SCOTTI, in his individual and official capacity, and DOES 1 TO 10,<br><br>Defendants. | Case No. 2:18-cv-07650-DMG-PLA<br><br>**FIRST AMENDED COMPLAINT** |

## INTRODUCTION

1.      While employed by the County of Los Angeles as a Sheriff's deputy, and while working at the Century Regional Detention Center, defendant Deputy Giancarlo Scotti sexually harassed, abused and assaulted female inmates that he had the duty to protect. Plaintiffs Angelena Sandifor, Brenda Blandon and Jamie Utterback are three of Deputy Scotti's victims.

1

2.      On or around June 5, 2017, Deputy Scotti sexually assaulted Plaintiff Jamie Utterback by forcing her to rub his erect penis while she was isolated and alone with him in an elevator with video surveillance.

3.      On or around September 11, 2017, Deputy Scotti sexually assaulted Plaintiff Angelena Sandifor by forcing her to orally copulate him from her cell, as he stood in a hallway viewable by video surveillance.

4.       On or around November 25, 2016, Deputy Scotti sexually harassed and assaulted Plaintiff Brenda Blandon by ordering her to disrobe while in her cell. On or around December 2, 2016, Deputy Scotti groped Plaintiff Brenda Blandon's breast while she was isolated and alone with him in an elevator with video surveillance.

5.      On September 13, 2017, Deputy Scotti was arrested on suspicion of sexually assaulting at least other two women inmates at the Century Regional Detention Facility. Specifically, the accusations which compelled Deputy Scotti's arrest included rape under color of authority and oral copulation under color of authority.

6.      On February 21, 2018, the Los Angeles County District Attorney's Office filed a felony complaint, charging Deputy Scotti with sexually assaulting six female inmates housed at the Lynwood facility. Reference is made to the *People of the State of California v. Giancarlo Scotti*; Case No. BA465694.

7.      This civil rights action seeks compensatory and punitive damages from defendants for violating rights under the United States Constitution in connection with the sexual assault of plaintiffs by Deputy Scotti. In sexually assaulting and abusing the three plaintiffs and other victims, Deputy Scotti exploited opportunities that were provided by the County's deliberate indifference to the safety of the three plaintiffs and other victims. Deputy Scotti's supervisors and co-workers, together with the County of Los Angeles and the Los Angeles County Sheriff's Department, and Sheriff McDonnell, failed to respect and enforce key policies designed to prevent and deter sexual abuse, failed to train their employees regarding those policies, failed to discipline their employees for violating those policies, maintained vague and unclear policies, and

maintained customs and practices that deviated from written policy.

**JURISDICTION AND VENUE**

8. This case arises under 42 U.S.C. § 1983. Accordingly, subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. Jurisdiction for the claims based on California law is founded on 28 U.S.C. § 1367(a), which provides this court with supplemental jurisdiction over state law claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9. Plaintiffs' claims arise out of a course of conduct involving officials for the County of Los Angeles, in the County of Los Angeles, State of California, and within this judicial district. Venue is proper in this district under 28 U.S.C. § 1391(b), as this is the district in which a substantial part of the events or omissions giving rise to the claims occurred.

**PARTIES**

10. Plaintiff Angelena Sandifor is an adult woman competent to sue. At all relevant times, Plaintiff Sandifor was incarcerated at the Century Regional Detention Facility ("CRDF"), a women's jail located at 11705 Alameda Street, Lynwood, CA 90059. Plaintiff Sandifor was last released from the CRDF on August 30, 2018.

11. Plaintiff Brenda Blandon is an adult woman competent to sue. At all relevant times, Plaintiff Blandon was incarcerated at the Century Regional Detention Facility ("CRDF"), a women's jail located at 11705 Alameda Street, Lynwood, CA 90059. Plaintiff Blandon was last released from the CRDF on or around December 9, 2016.

12. Plaintiff Jamie Utterback is an adult woman competent to sue. At all relevant times, Plaintiff Utterback was incarcerated at the Century Regional Detention Facility ("CRDF"), a women's jail located at 11705 Alameda Street, Lynwood, CA 90059. Plaintiff Blandon was last released from the CRDF on or around September 4, 2018.

13.     Defendant County of Los Angeles ("County") is a legal and political entity established under the laws of the State of California, with all of the powers specified and necessarily implied by the Constitution and the laws of the State of California and exercised by various government agents and officers. In this case, the County acted through its agents, employees, and servants, including the policymakers for defendant the Los Angeles County Sheriff's Department ("LASD"), and through defendant James McDonnell ("McDonnell"), the Los Angeles County Sheriff. Defendant McDonnell is sued in his official and individual capacity. At all relevant times, Defendants County, LASD, McDonnell and each of them, possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the LASD, including those individuals charged with protecting the health and safety of detainees and arrestees at County detention facilities, including plaintiffs Angelena Sandifor, Brenda Blandon and Jamie Utterback, and to assure that said actions, policies, rules, regulations, customs, practices and procedures of the LASD and its employees and agents complied with the laws and constitutions of the United States and the State of California. At all relevant times, the County was the employer of each of the individually named defendants, and the CRDF was a County-run facility, operated by the LASD.

14.     Defendant Deputy Giancarlo Scotti ("Deputy Scotti") is a deputy sheriff for the LASD. At all relevant times, Deputy Scotti was a duly authorized employee and agent of the County of Los Angeles, subject to oversight and supervision by the County's elected and non-elected officials, and was acting under color of law and within the course and scope of his duties as a sheriff deputy for the LASD and with complete authority and ratification of the principal, County. In committing the acts alleged herein, Deputy Scotti acted within the scope of his respective employment and under color of law. Deputy Scotti is sued in both his official and individual capacities.

15.     The true names of defendants Does 1 through 10 are presently unknown

to Plaintiffs, who therefore sue each of these defendants by such fictitious names; but upon ascertaining the true identity of a defendant Doe, Plaintiffs will amend this complaint or seek leave to do so by inserting the true and correct name in lieu of the fictitious name. Plaintiffs are informed and believes, and on the basis of such information and belief alleges that each defendant Doe herein is in some manner responsible for the injuries and damages alleged herein. Each individually named Doe defendant, like each individually named defendant, acted under color of law and within the scope of his or her agency and employment with the County and LASD. Each Doe is sued in both his/her official and individual capacities.

## FACTS OF THE SANDIFOR INCIDENT

16.     Plaintiff Angelena Sandifor repeats and re-alleges each and every allegation in paragraphs 1 through 15 of this complaint with the same force and effect as if fully set forth herein.

17.     Plaintiff Angelena Sandifor was arrested and placed into the custody of the LASD sometime in or near November 2016.

18.     During her time at the CRDF in 2017, Sandifor came into contact with Deputy Scotti. In particular, on or around September 10, 2017, Sandifor first met Deputy Scotti at the CRDF medical clinic. Sandifor was given a blanket and she asked Deputy Scotti whether she could keep it and he replied something to the effect of, "you can pay me for it some other way." Later that day, after Sandifor had left the clinic, Deputy Scotti told Sandifor, "don't go to sleep right now." Around this time, Sandifor saw that Deputy Scotti greeted another LASD deputy working in "the bubble" of her module (2100) and block (block 1) who was ostensibly responsible for watching surveillance video. This LASD employee was in a green uniform, was an older, bald black man, but Sandifor does not know his name.

19.     Later that day, after Sandifor had been returned to her cell, Deputy Scotti walked up to Sandifor's cell and gave her toilet paper through the metal slot on the door. At this point he told her, "let me see your titties!" Shocked and scared, Sandifor

1   declined and Deputy Scotti walked away.

2       20.     Later that same evening, sometime around 1 a.m. on September 11, 2017,

3   Deputy Scotti returned to the area around Sandifor's cell. While standing in eye-shot of

4   Sandifor's cell, but not directly in front of the cell, Deputy Scotti motioned to get

5   Sandifor's attention and then unzipped his pants and pulled out his penis. In response,

6   Sandifor brushed her hand away through the open slot to the door of her cell, gesturing

7   for Deputy Scotti to stop and to go away. Instead, Deputy Scotti approached Sandifor's

8   cell and demanded to touch her breasts.

9       21.     Upon hearing Deputy Scotti's demand, Sandifor became extremely

10  frightened. As a fourteen-year-old, Sandifor had been sexually assaulted and she

11  consequently suffers from anxiety and depression. Deputy Scotti's repeated and

12  ramped-up sexual advances scared Sandifor, especially because he was so persistent, so

13  open, and so bold. Despite being a victim of sexual assault, Sandifor had not been

14  questioned or screened by any County or LASD employee upon entering the CRDF

15  regarding her past sexual victimization. Indeed, before September 12, 2017, the entity

16  defendants had made no effort to determine whether Sandifor had a history of sexual

17  abuse, nor had she been assessed whatsoever regarding her risk of sexual victimization.

18      22.     Deputy Scotti soon approached Sandifor's cell and demanded to touch

19  her "tits." Deputy Scotti then felt Sandifor's bare breasts through the slot of the cell

20  door. Deputy Scotti then pulled out his penis, put it through the slot of the cell door

21  and Sandifor acceded to his pressure by orally copulating him. At one point during this

22  ordeal for Sandifor, Deputy Scotti told her something to the effect of, "I'm going to

23  bust in your mouth." When Deputy Scotti finished, Sandifor walked to toilet, tried to

24  clean herself up, and then went to sleep. Sandifor believes the ordeal was recorded by

25  video surveillance, although no LASD employee ever intervened so it is unclear

26  whether anyone was watching the video as the sexual assault occurred.

27      23.     On September 13, 2017, Deputy Scotti was arrested for sexually assaulting

28  inmates at the CRDF. Sandifor heard the news and came forward to a LASD employee

working at the CRDF. Investigators went to Sandifor's cell and inspected her items, even bringing a blacklight into the cell. It was clear that Sandifor had been identified as one of Deputy Scotti's victims. In the following days and weeks, on multiple occasions, Sandifor met with LASD Internal Affairs officers. On at least two occasions Sandifor met with Lieutenant Stone and a female officer and was shown a video of the incident, lasting around eight minutes. On another occasion, Sandifor met with a Lieutenant Christian and a Sergeant Colon, and she herself was videotaped while being interviewed. During at least one of these meetings Sandifor was able to identify Deputy Scotti, circling a photo of him that the officers showed her. Sandifor experienced depression and anxiety through this time period. Sandifor was placed on psychotropic medications that she had never taken before; she felt bullied about this and does not remember much of this time period when she was heavily medicated.

24.     Despite being identified as a victim, Sandifor was not protected from ongoing abuse, and instead was retaliated against for having complained of her victimization. Sometime in September of 2017 two Does, LASD Deputies, spoke to Sandifor and referenced the sexual assault, one said something to the effect of, "wouldn't you want another partner like that," and then both laughed. Sandifor was placed in sustained fear and anxiety, and felt that she was unsafe and could not trust anyone at the CRDF.

25.     Sandifor suffered further psychological abuse and retaliation. Around July 2018, having long been identified as a victim of Deputy Scotti's a Doe defendant, an LASD Deputy, told her in reference to Deputy Scotti, "don't act like you didn't like it," and "I bet you wanted to take it in the ass." Again, Sandifor was placed in sustained fear and anxiety, and felt that she was unsafe and could not trust anyone at the CRDF. To her great relief, Sandifor was released from the CRDF on August 30, 2018.

## FACTS OF THE BLANDON INCIDENT

26.     Plaintiff Brenda Blandon repeats and re-alleges each and every allegation in paragraphs 1 through 15 of this complaint with the same force and effect as if fully

set forth herein.

27.     Plaintiff Brenda Blandon was arrested and placed into the custody of the LASD on or around November 21, 2016. Blandon was detained at the CRDF, until her release on or around December 9, 2016.

28.     On or about November 25, 2016, during the evening and after dinner, Deputy Scotti walked by Blandon's cell at the CRDF and stopped to talk to her. Blandon felt singled out and that the subject of the conversation was not just small talk. In fact, Deputy Scotti started the conversation by ordering Blandon to disrobe. The verbal command was accompanied by a very forceful motion and head gesture, which suggested a "do it right now" type of command. Blandon, shocked and afraid, complied and disrobed to where she was naked in her cell. Deputy Scotti, replied, "looks good," and walked away.

29.     Brenda Blandon's second encounter with Deputy Scotti came just days later. On or about December 2, 2016, Blandon was in the laundry area where she encountered Deputy Scotti. This time, Deputy Scotti had communicated a desire to want to "fuck," and proceeded to scour the area for a place that was free of potential video surveillance. Stunned and afraid, Blandon just stood and watched Deputy Scotti, wondering what he would do next. When it was apparent that Deputy Scotti was uncomfortable with their current location and potential for detection, he ordered Blandon to follow him into the staff elevator, located on the first floor near, working module 1700. Blandon afraid and alone, assented to his commands and followed Deputy Scotti into the elevator. Once in the elevator, Deputy Scotti forcefully grabbed Blandon's breast. Deputy Scotti, ordered Blandon to return to her cell. Blandon believes the ordeal was recorded by video surveillance, although no LASD employee ever intervened so it is unclear whether anyone was watching the video as the sexual assault occurred.

30.     The two had no further contact while Blandon was incarcerated at the CRDF. However, shortly upon Blandon's release from custody, Deputy Scotti,

contacted Blandon on Facebook and messaged her, "do you want to fuck." Blandon did not respond to that message and has had no further contact with Deputy Scotti.

31.     After Blandon's release, and on or about a date Plaintiff cannot recall, Plaintiff's mother, Zeneyda Walla, was contacted by Sergeant Bernal of LASD who indicated that he wished to speak with Blandon regarding the assaults. Ms. Blandon subsequently provided law enforcement with an accounting of the sexual assaults and was also shown video surveillance footage of the sexual assault which occurred on or about December 2, 2016 in the elevator.

32.     On January 4, 2018, Kelly Adler, acting Captain of LASD's Internal Criminal Investigations Bureau, provided Blandon with U- Nonimmigrant Status Certification (USCIS Form I-918), commonly referred to as a U-Visa, certifying Blandon as a victim in a criminal investigation, specifically, a victim of Deputy Scotti's, referring to the sexual assaults perpetrated onto Blandon by Deputy Scotti in 2016.

## FACTS OF THE UTTERBACK INCIDENT

33.     Plaintiff Jamie Utterback repeats and re-alleges each and every allegation in paragraphs 1 through 15 of this complaint with the same force and effect as if fully set forth herein.

34.     Plaintiff Jamie Utterback was arrested and placed into the custody of the LASD on or around March of 2017. Sometime in late March or early April of 2017 she was transferred to the 3500 module where she met Deputy Scotti. Deputy Scotti was known as a "cool" guard, who would talk friendly to the inmates and even bring his guitar sometimes. In April 2017 Deputy Scotti started flirting with Utterback. He would call her over to his desk to make small talk, saying things like, "you're Armenian, are you in here for fraud?" He also would volunteer information about himself, such as his family coming from Sicily, Italy.

35.     Deputy Scotti intensified his interest when he started asking about Utterback's relationship status and asked for her Facebook profile so he could look her up and see pictures of her, so as to see what she looked like when not in jail.

1    Intimidated by his attention and feeling unable to say no to the deputy who supervised

2    her, Utterback gave Deputy Scotti her Facebook information. On a later occasion

3    Deputy Scotti told Plaintiff Utterback, "I looked you up last night…very nice." This

4    creepy comment happened in the module during pill call around late May or early June

5    of 2017. Deputy Scotti would ask inappropriate, creepy and flirtatious questions like,

6    "have you been a 'good girl' or a 'bad girl'?" and also stare at her for long periods of

7    time.

8           36.    At one point, Deputy Scotti asked Utterback whether she wanted to go on

9    a "field trip" with a pass that would permit her to leave the day room, and on a later

10   date told her to be ready in the "next couple days." Utterback recalls trying to resist

11   Deputy Scotti's attention, saying words to the effect of, "you're not my type, don't be

12   so desperate hitting on inmates." Yet Utterback did not feel comfortable outright

13   resisting Deputy Scotti's advances because he would assert his power over her. In one

14   instance, Utterback was talking to another male deputy working at the day room when

15   she noticed Deputy Scotti get jealous, culminating in him actually threatening to "roll"

16   her out of the day room.

17          37.    It was in the context of this unwanted attention that on or around June 5,

18   2017, Deputy Scotti called Utterback over to his desk and gave her a day pass (which

19   she understood to be fake) and said "ready," while lifting his eyebrow suggestively.

20   Fearing her privileges would end and that she would be "rolled" out of the day room

21   given his prior threats, and fearing him especially because she realized the efforts he

22   had taken to make a fake pass, Utterback assented to his demands and headed to the

23   elevator to go from the third floor to the clinic on the first floor of the CRDF. When

24   the two arrived at the clinic Deputy Scotti told Utterback to sit down, he then left, only

25   to return in a few minutes.

26          38.    Deputy Scotti then ordered Utterback to get back in the elevator. Once in

27   the elevator, on the way back up to the 3rd floor, Deputy Scotti told Utterback,

28   referring to her by her nickname, "Hey, Diamond, why don't you come over here and

give it a little grab." Utterback initially froze in fear and shock; it was one thing to get close to the line of appropriate behavior and be a "cool" guard who was flirtatious, but it was another to cross way over the line and demand sexual favors from an inmate. Utterback recalls trying to resist by saying something like, "there's a camera in here, they can see us." Deputy Scotti responded by saying words to the effect of, "no, don't worry, they don't watch it." Deputy Scotti, unworried he would be caught by anyone monitoring the video surveillance then waived Utterback over to him with his eyes. Not feeling as if she had the power to say no, Utterback stood closely in front of Deputy Scotti, and complied with his demand by grabbing his penis with both hands and making a massaging gesture for three or four seconds. At this time, Deputy Scotti's penis was already erect; he moaned in her ear and raised his leg when she touched him. Utterback believes the ordeal was recorded by video surveillance, although no LASD employee ever intervened so it is unclear whether anyone was watching the video as the sexual assault occurred.

39.     When the elevator ride ended the two exited and Deputy Scotti motioned to a deputy in "the bubble" with a thumbs-up sign and Utterback went to her cell. Afterwards, Utterback felt gross and upset about what happened, feeling completely violated by Deputy Scotti and the power he wielded over her. A few days later Utterback requested to leave the module because she was tired of his looks, but also tired of comments from other inmates who had noticed Deputy Scotti's attention towards her. These comments were to the effect of, "if you want anything around here just ask Diamond." Utterback reported the incident to two inmates, Melissa Diehl and Ivana "Q" Posaj. However, after the arrest of Deputy Scotti she did not report the incident to authorities, fearing she would get into trouble and preferring to focus on following the rules until her release.

40.     In November 2017 Utterback was released from the CRDF. Before her release Utterback was contacted by LASD officer Bernal and another male officer. Officer Bernal said that her name had been coming up in relation to Deputy Scotti but

Utterback was uncomfortable and fearful of the consequences of saying what had happened to her, so she didn't. Later, Officer Bernal went to visit Utterback at a treatment facility in Tarzana that she had been conditionally released to, and also at a court appearance in Van Nuys in August of 2018. Utterback went back in to custody and later in August of 2018 she gave a statement to Officer Bernal. After that meeting, Utterback met with officials whom she believed were LASD Internal Affairs ("IA") officers, one was a man with the last name Morris and his partner was female. Utterback met with IA Officer Morris on another occasion, in which she was shown a video of her sexual assault by Deputy Scotti on the elevator at the CRDF.

41.     Sometime after the meeting with IA Officer Morris and his female partner, Utterback was transferred by Doe defendants LASD deputies to solitary confinement, also known as "K-10." While in K-10, Doe defendants did not permit Utterback to access the telephone, nor access the showers. Unable to bathe or contact the outside world by telephone for over a week, Utterback was terrified. She had met with IA officers and then she had been punished by other LASD employees, Doe defendants. The psychological and physical toll were devastating.

42.     To make matters worse, a defendant Doe, another LASD deputy, blamed Plaintiff Utterback for the fact she had been placed in solitary confinement, and warned her against flirting with male deputies, as if Plaintiff Utterback had invited the unwanted sexual predation by Deputy Scotti. When she was released from "K-10" this Doe defendant suggested to Utterback that CRDF was unsafe for her, but that she had contributed to her treatment. To her great relief, Plaintiff Utterback was released from the CRDF on or around September 4, 2018.

## COMMON FACTS RELATED TO THE SANDIFOR, BLANDON AND UTTERBACK INCIDENTS

43.     Upon information and belief, Plaintiff Sandifor, Plaintiff Blandon and Plaintiff Utterback (collectively referred to as "Plaintiffs") allege that before either plaintiff was sexually assaulted by Deputy Scotti, that the County, LASD and

McDonnell were on notice that other female inmates had complained about sexual assaults and sexually inappropriate behavior by Deputy Scotti. Furthermore, Plaintiffs allege that Deputy Scotti had been put on some form of employment probation by the County before he sexually assaulted Plaintiffs. Nonetheless, the County, LASD and McDonnell, and certain Does, permitted Deputy Scotti to work at a women's jail, permitting him the regular, daily task of supervising women inmates, which oftentimes necessitated that he be alone with women inmates.

44.     Defendant McDonnell, and certain Does, other LASD supervising officers, were on notice that Deputy Scotti was engaging in conduct in violation of written policy, including policies deterring sexual abuse and impropriety.

45.     Defendant McDonnell, and certain Does, other LASD supervising officers, failed to act to prevent Deputy Scotti from engaging in this conduct. Since the written policies were designed, at least in part, to prevent and deter sexual abuse, McDonnell, and other LASD supervising officers knew, or reasonably should have known, that the failure to enforce these policies heightened the danger of sexual abuse of female inmates by Deputy Scotti.

46.     As a result of McDonnell, and certain Does' (other LASD supervising officers) failure to supervise Deputy Scotti, despite being put on notice, Deputy Scotti was not subject to timely LASD discipline and instead permitted the opportunity to victimize female inmates, such as Plaintiffs.

47.     Further evidence exists that the County, LASD, and McDonnell are not meeting their constitutional and statutory obligations and are not adequately protecting women inmates from sexual assault. The Prison Rape Elimination Act of 2003 ("PREA"), currently codified at 34 U.S.C. § 30301, et seq., mandates that correctional facilities protect inmates from sexual assault. A subsequently promulgated federal rule (28 C.F.R. 115.401) requires that agencies ensure that each of their correctional facilities is audited once every three years.[1] At the time of the sexual assaults of Plaintiffs, the

---

[1] 28 C.F.R. Part 115, *available at* http://www.prearesourcecenter.org/sites/default/files/library/2012-12427.pdf

1 CRDF had not undergone such a timely audit.  Indeed, no jail operated by the County
2 and LASD had undergone a PREA-related audit within three years of Deputy Scotti's
3 sexual assaults of the Plaintiffs and numerous other women.

4      48.    Only after the sexual assaults of Plaintiffs did defendants permit a PREA-
5 related audit of the CRDF. The preliminary report of federal auditors found many
6 deficiencies at CRDF regarding the prevention of rape and sexual assault, including a
7 lack of screening to assess inmates' risk of sexual victimization, and a weak grievance
8 system that adequately protects inmates who complain about sexual abuse from
9 retaliation.[2]

10      49.    If Deputy Scotti had been adequately trained and supervised prior to the
11 sexual abuse of the Plaintiffs, if his errant behavior had been timely investigated, if he
12 had been timely punished as a result, if he was properly monitored so that he could no
13 sexually assault women in elevator rides knowing that the video surveillance was not
14 being live-monitored to prevent him from acting as a sexual predator, and if the CRDF
15 had been timely and properly audited, and if the CRDF was compliance with federal
16 standards preventing prison rape, then the sexual abuse of the Plaintiffs in this case
17 could have been averted.

18 **DAMAGES**

19      50.    As a direct and proximate result of aforesaid acts and omissions, and the
20 customs, practices, policies and decisions of the defendants alleged in this complaint,
21 Plaintiffs suffered and will continue to suffer great emotional, mental and physical pain
22 and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity,
23 embarrassment, harm to reputation, and apprehension, which have caused and will
24 continue to cause, Plaintiffs to sustain general damages in a sum to be determined at
25 trial.

26      51.    As a direct and proximate result of the aforesaid acts, omissions, customs,

27

28     [2] Maya Lau, "L.A. County women's jail lags behind national standards on preventing sexual abuse, report finds." L.A.
TIMES, April 1, 2018, *available at* http://www.latimes.com/local/lanow/la-me-lasd-prea-20180401-story.html

14

practices, policies and decisions of the aforementioned Defendants, Plaintiffs suffered the denial of their fundamental constitutional rights guaranteed by the First, Fourth, Eighth and Fourteenth Amendments of the United States Constitution, which have caused Plaintiffs to sustain damages in a sum to be determined at trial.

52.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiffs incurred and/or will incur medical expenses, including psychological treatment.

53.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiffs suffered past and future losses of income that have caused her to sustain economic damages in a sum to be determined at trial.

54.     Deputy Scotti, and individual Doe defendants, excluding Defendants County and LASD, acted in a manner that was willful, wanton, malicious and oppressive, with reckless disregard of or in deliberate indifference to and with the intent to deprive Plaintiffs of their constitutional rights, and did in fact violate the aforementioned rights, entitling Plaintiffs to exemplary and punitive damages in an amount to be proven at the trial in this matter.

### FIRST CLAIM FOR RELIEF
### Violation of Civil Rights – 42 U.S.C. § 1983

(First Amendment – Plaintiff Sandifor and Plaintiff Utterback Against All Defendants)

55.     Plaintiff Sandifor incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

56.     At all relevant times, Plaintiff Sandifor and Plaintiff Utterback were incarcerated at the CRDF, a jail operated by the County. At all relevant times Plaintiff Sandifor and Plaintiff Utterback were under the direct supervision and control of their jailers, deputies of the LASD.

57.     The entity defendants, individual defendants, and Doe defendants, while

acting under color of law, deprived Plaintiff Sandifor of her civil rights under the First Amendment by acting and/or allowing each other to act in a threatening or violent manner and otherwise engaging in conduct that inhibited Plaintiff Sandifor's freedom of speech and right to petition for redress of grievances and to complain about their treatment while in custody, and that such actions undertaken by defendants would chill a person of ordinary firmness from continuing to engage in freedom of speech. The entity defendants, individual defendants, and Doe defendants, while acting under color of law, deprived Plaintiff Utterback of her civil rights under the First Amendment by acting and/or allowing each other to act in a threatening or violent manner and otherwise engaging in conduct that inhibited Plaintiff Utterback's freedom of speech and right to petition for redress of grievances and to complain about their treatment while in custody, and that such actions undertaken by defendants would chill a person of ordinary firmness from continuing to engage in freedom of speech.

58.     The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power that shock the conscience. They are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons, or ensuring civil order. The above acts and omissions were consciously chosen from among various alternatives.

59.     The conduct of entity defendants, individual defendants, and Doe defendants was willful, wanton, malicious, or done with reckless disregard for the rights and safety of Plaintiff Sandifor and Plaintiff Utterback. For instance, Plaintiff Sandifor had already been identified as a victim of Deputy Scotti when Doe defendant, an LASD Deputy, told her in reference to Deputy Scotti, "don't act like you didn't like it," and "I bet you wanted to take it in the ass." Similarly, Plaintiff Utterback, after several instances of meeting with LASD Internal Affairs officers to discuss her mistreatment by Deputy Scotti, both with Officer Bernal and on a later occasion with Officer Morris,

was sent by defendant Does into solitary confinement ( "K-10") and not permitted access to the telephone nor the showers for over a week. To make matters worse, defendant Doe officer blamed Plaintiff Utterback for the fact she had been placed in solitary confinement, and warned her against flirting with male deputies, as if Plaintiff Utterback had invited the unwanted sexual predation by Deputy Scotti. Plaintiff Utterback had complained to Internal Affairs officers and was then placed into "K-10", a condition that would chill any person from making future complaints, since to complain about being a sexual victim meant at the CRDF that victimization was a valid basis for being punished with solitary confinement and denial of the right to access a phone and bathing facilities.

60.     Plaintiff Sandifor specifically alleges that Defendants' complained of acts and/or omissions were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injuries complained of herein by Plaintiff Sandifor. Plaintiff Utterback specifically alleges that Defendants' complained of acts and/or omissions were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injuries complained of herein by Plaintiff Utterback.

61.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff Sandifor suffered extreme and severe mental anguish, and were injured as alleged above, entitling each of them to recover compensatory and punitive damages (excepts as to the entity defendants) according to proof. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff Utterback suffered extreme and severe mental anguish, and were injured as alleged above, entitling each of them to recover compensatory and punitive damages (excepts as to the entity defendants) according to proof.

## SECOND CLAIM FOR RELIEF

### Violation of Civil Rights – 42 U.S.C. § 1983

(Fourth Amendment– Plaintiffs Against Deputy Scotti)

62.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

63.     At all relevant times, Plaintiffs were incarcerated at the CRDF, a jail operated by the County. At all relevant times Plaintiffs were under the direct supervision and control of their jailers, deputies of the LASD.

64.     Defendant Deputy Scotti, while acting under color of law, sexually assaulted Plaintiffs and engaged in the conduct described above, and thereby deprived Plaintiffs of their civil rights under the Fourth Amendment to the United States Constitution.

65.     The force used by Deputy Scotti upon Plaintiffs while sexually assaulting each of them while in custody was harmful, unwanted, and excessive.

66.     The sexual assaults of Plaintiffs by Deputy Scotti, and Deputy Scotti's conduct as described above, were unreasonable, unjustified, and offensive to human dignity.

67.     The conduct of Deputy Scotti was willful, wanton, malicious, or done with reckless disregard for the rights and safety of Plaintiffs and therefore warrants the imposition of exemplary and punitive damages.

68.     As a result of the conduct of Deputy Scotti, Plaintiffs were harmed.

## THIRD CLAIM FOR RELIEF

### Violation of Civil Rights – 42 U.S.C. § 1983

(Eighth Amendment –Plaintiffs Against Deputy Scotti)

69.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

70.     At all relevant times, Plaintiffs were incarcerated at the CRDF, a jail operated by the County.

71.  At all relevant times Plaintiffs were under the direct supervision and control of their jailers, deputies of the LASD.

72.  Defendant Deputy Scotti, while acting under color of law, sexually assaulted Plaintiffs and engaged in the conduct described above, and thereby deprived Plaintiffs of their civil rights under the Eighth Amendment to the United States Constitution.

73.  The force used by Deputy Scotti upon Plaintiffs while sexually assaulting each of them while in custody was harmful, unwanted, and excessive.

74.  The sexual assaults of Plaintiffs by Deputy Scotti, and Deputy Scotti's conduct as described above, were unreasonable, unjustified, and offensive to human dignity. It was also with deliberate indifference to the rights and safety of Plaintiffs.

75.  The conduct of Deputy Scotti was willful, wanton, malicious, sadistic, and done with reckless disregard for the rights and safety of Plaintiffs and therefore warrants the imposition of exemplary and punitive damages.

76.  As a result of the conduct of Deputy Scotti, Plaintiffs were harmed.

**FOURTH CLAIM FOR RELIEF**

**Violation of Civil Rights – 42 U.S.C. § 1983**

(Fourteenth Amendment –Plaintiffs Against Deputy Scotti)

77.  Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

78.  At all relevant times, Plaintiffs were incarcerated at the CRDF, a jail operated by the County. At all relevant times Plaintiffs were under the direct supervision and control of their jailers, deputies of the LASD.

79.  Defendant Deputy Scotti, while acting under color of law, sexually assaulted Plaintiffs and engaged in the conduct described above, and thereby deprived Plaintiffs of their civil rights under the Fourteenth Amendment to the United States Constitution.

80.  The force used by Deputy Scotti upon Plaintiffs while sexually assaulting

1   each of them while in custody was harmful, unwanted, and excessive.

2        81.    The sexual assault of Plaintiffs by Deputy Scotti, and Deputy Scotti's

3   conduct as described above, was unreasonable, unjustified, and offensive to human

4   dignity. It was also with deliberate indifference to the rights and safety of Plaintiffs.

5        82.    The conduct of Deputy Scotti was willful, wanton, and done with reckless

6   disregard for the rights and safety of Plaintiffs and therefore warrants the imposition of

7   exemplary and punitive damages.

8        83.    As a result of the conduct of Deputy Scotti, Plaintiffs were harmed.

9        84.    Plaintiffs specifically allege that Defendants' complained of acts and/or

10  omissions, were within each of their control, and within the feasibility of each of them,

11  to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and

12  injury complained of herein by Plaintiffs.

13                  **FIFTH CLAIM FOR RELIEF**

14             **Violation Due Process – 42 U.S.C. § 1983**

15           (Fourteenth Amendment –Plaintiffs Against Deputy Scotti)

16       85.    Plaintiffs incorporate by reference each and every allegation contained in

17  the foregoing paragraphs as if re-alleged herein.

18       86.    At all relevant times, Plaintiffs were incarcerated at the CRDF, a jail

19  operated by the County. At all relevant times Plaintiffs were under the direct

20  supervision and control of their jailers, deputies of the LASD.

21       87.    Plaintiffs had a cognizable interest under the Due Process Clause of the

22  Fourteenth Amendment of the United States Constitution to be free from state actions

23  that deprive them of life, liberty, or property in such a matter as to shock the

24  conscience.

25       88.    Defendant Deputy Scotti acting under color of law and within the course

26  and scope of his employment by the County and LACPD, sexually assaulted Plaintiffs

27  and engaged in the conduct described above, and thereby deprived Plaintiffs of their

28  civil rights under the Fourteenth Amendment to the United States Constitution.

89.     The aforementioned actions of Deputy Scotti, along with undiscovered conduct, shock the conscience, in that he acted with deliberate indifference to the constitutional rights of Plaintiffs.

90.     The acts of Deputy Scotti violated the substantive due process rights of Plaintiffs.

91.     The acts or omissions of Deputy Scotti caused harm to Plaintiffs.

92.     The conduct of Deputy Scotti was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiffs and therefore warrants the imposition of exemplary and punitive damages.

93.     Plaintiffs specifically allege that Defendants' complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff.

**SIXTH CLAIM FOR RELIEF**

**Municipal Liability –Unconstitutional Custom, Practice, or Policy**

**42 U.S.C. § 1983**

(Plaintiffs Against County, LASD, McDonnell, and Certain Does)

94.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

95.     The individual defendants and Doe defendants acted under color of law and within the course and scope of their employment by the County and LASD.

96.     The individual defendants and Doe defendants deprived Plaintiff Sandifor of her rights under the First Amendment, and Deputy Scotti deprived both Plaintiffs of their rights under the Fourth, Eighth, and Fourteenth Amendments, as alleged above.

97.     Plaintiffs are informed and believe, and thereon alleges that, at all times herein mentioned, defendants County, LASD, the relevant policy maker, McDonnell, and relevant County officials, unnamed certain Does (hereinafter referred to collectively as the entity defendants) maintain or tolerate unconstitutional customs,

1   practices, and policies that facilitated the deprivation of Plaintiffs' rights under the

2   First, Fourth, Eighth, and Fourteenth Amendment, as alleged above.

3       98.    The policies, customs, and practices described above are also evidenced

4   by the victimization of Plaintiffs and other female inmates at the CRDF by Deputy

5   Scotti. Entity defendants' non-compliance with PREA standards, including the failure

6   to timely audit the CRDF, is further evidence of entity defendants' systematic failure to

7   comply with their constitutional obligations.

8       99.    Entity defendants had either actual or constructive knowledge of the

9   deficient policies, practices and customs alleged in the paragraphs above. Indeed, entity

10  defendants knew of their obligations under PREA and still failed to submit to a federal

11  audit and still failed to meet baseline federal standards at the CRDF. Said officials acted

12  with deliberate indifference to the foreseeable effects and consequences of these

13  policies, practices and customs with respect to the constitutional rights of Plaintiffs and

14  other female inmates similarly situated.

15      100.    As a direct and proximate result of the aforesaid acts, omissions, customs,

16  practices, policies and decisions of the aforementioned defendants, Plaintiffs were

17  injured and sustained damages as alleged above. Accordingly, Plaintiffs seek

18  compensatory damages from all the entity defendants, and punitive damages from

19  defendant McDonnell, in his individual capacity only.

20  **SEVENTH CLAIM FOR RELIEF**

21  **Municipal Liability –Inadequate Training/Policy of Inaction**

22  **42 U.S.C. § 1983**

23  (Plaintiffs Against County, LASD, McDonnell and Certain Does)

24      101.    Plaintiffs incorporate by reference each and every allegation contained in

25  the foregoing paragraphs as if re-alleged herein.

26      102.    At all times mentioned herein and prior thereto, defendants County,

27  LASD, McDonnell and certain Does (hereinafter referred to collectively as the entity

28  defendants) had a duty to train, instruct, supervise, discipline and/or correct their

1  subordinates to assure they respected and did not violate constitutional and statutory

2  rights of inmates, and to objectively investigate violations of women prisoners' rights,

3  including, but not limited to, the right to be free from sexual abuse, the right to be safe

4  and protected from injury while in defendants' custody, and the right to speak to

5  officials about sexual abuse without retaliation under the First, Fourth, Eight and

6  Fourteenth Amendments to the U.S. Constitution.

7  103.   Plaintiffs are informed and believe, and thereupon allege, that prior to the

8  incident alleged herein, defendants McDonnell and certain Does facilitated, permitted,

9  ratified and/or condoned similar acts of sexual abuse of female inmates by male

10  Sheriff's deputies, and were deliberately indifferent to the health and safety of inmates

11  in general and Plaintiffs in particular. Said defendants knew, or should have reasonably

12  knowns, of this practice, pattern or custom of constitutional violations by the deputies

13  they supervised, and additionally, of the existence of certain facts and situations that

14  created the potential of unconstitutional acts, and had a duty to instruct, train, supervise

15  and discipline their subordinates to prevent similar acts to other persons, but failed to

16  do so.

17  104.   The training provided by the County, LASD, and the relevant policy

18  maker, Sheriff McDonnell, and relevant County officials, and certain Does was not

19  adequate to train their sheriff deputies and other jail staff to handle the usual and

20  recurring situations with which they must deal. As evidenced by the numerous

21  instances of female inmates other than Plaintiffs who were sexually assaulted by male

22  deputies, the entity defendants did not adequately train their officers and staff to

23  prevent, deter, detect, and avoid sexual abuse of female inmates at the CRDF – and

24  were on notice of such.

25  105.   The entity defendants maintained a policy and practice of inaction with

26  respect to the violation of policies designed to prevent or deter sexual abuse of female

27  inmates. LASD officers who engaged in suspicious behavior, or behavior that violated

28  written policy, were inadequately disciplined or otherwise not penalized in connection

with sexual or otherwise inappropriate behavior towards female inmates. The entity defendants were deliberately indifferent to the obvious consequences of their failure to train their officers and staff adequately. Entity defendants' non-compliance with PREA standards, including the failure to timely audit the CRDF, is further evidence of entity defendants' systematic failure to comply with their constitutional obligations.

106.   As a result thereof, Plaintiffs' rights under the First, Fourth, Eight and Fourteenth Amendments to the U.S. Constitution were violated. As a further result thereof, Plaintiffs sustained the injuries and damages alleged herein.

107.   The individual defendants and Doe defendants acted under color of law and within the course and scope of their employment by the County and LASD.

108.   As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and practice of inaction of the aforementioned defendants, Plaintiffs were injured and sustained damages as alleged above. Accordingly, Plaintiffs seek compensatory damages from all the entity defendants

109.   The conduct of the individual defendants mentioned herein, in their individual capacities, was intentional, malicious, willful, wanton and in reckless disregard of Plaintiffs' conditional rights, and/or grossly negligent as this conduct shocks the conscience and is fundamentally offensive to a civilized society, so as to justify the imposition of punitive damages against these defendants.

**EIGHTH CLAIM FOR RELIEF**

**Failure to Intervene to Prevent Civil Rights Violations – 42 U.S.C. §§ 1983**

(Plaintiffs Against Certain Individual Doe Defendants)

110.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

111.   At all times relevant, certain individual Doe defendants were present and were charged with the constitutional duties of protection of protection of Plaintiffs and were charged with the duty to not knowingly, with wanton disregard, cause their life, health and safety to be placed in danger by intentionally and/or deliberately ignoring

the known dangers to Plaintiffs posed by Deputy Scotti.

112.     Each said defendant had ample and reasonable sufficient time and opportunity to so intervene and prevent Plaintiffs' injuries, and were compelled to do so as a LASD deputy and/or employee under the laws of the state of California and United States Constitution. In deliberate indifference to the welfare of Plaintiffs, each said defendant intentionally and with deliberate indifference to the civil rights of Plaintiffs, refrained from intervening in the acts leading to Plaintiffs' injuries. Indeed, entity defendants knew of their obligations under PREA and still failed to submit to a federal audit and still failed to meet baseline federal standards at the CRDF.

113.     As a result thereof, Plaintiffs' rights under the First, Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution were violated. As a result thereof, Plaintiffs sustained the injuries and damages alleged herein.

114.     The conduct of the individual Doe defendants mentioned herein was intentional, malicious, willful, wanton and in reckless disregard of Plaintiffs' constitutional rights and/or grossly negligent in that this conduct shocks the conscience and is fundamentally offensive to a civilized society, so as to justify the imposition of punitive damages on the individual Doe defendants.

## NINTH CLAIM FOR RELIEF

### Violation of Civil Rights – 42 U.S.C. §§ 1983, 1988

### Conspiracy to Violate Civil Rights

(Against All Individual County Defendants)

115.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

116.     This cause of action arises under United States Code, Title 42, Sections 1983 and 1988, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege or immunity secured to each of them by the First, Eighth and Fourteenth Amendments to the United States Constitution.

117.     Defendants Deputy Scotti, McDonnell, and Does 1-10, and each of them:

1    (a) had a joint and simultaneous duty to make sure that Plaintiffs were not

2    sexually assaulted;

3    (b) had joint and simultaneous knowledge that Plaintiffs were at risk of

4    being sexually assaulted by Deputy Scotti;

5    (c) with such duty, knowledge and a meeting of the minds, took action at

6    the same time and in the same place to collaborate to refuse to protect

7    Plaintiffs from Deputy Scotti's sexual assaults. Thus, forming a 'pact of

8    denial' such that for the months that Plaintiffs was subject to Deputy

9    Scotti's sexual assaults – after the individual defendants had been alerted

10   to the danger Deputy Scotti posed to Plaintiffs – not a single one of them

11   did anything to intervene on Plaintiffs' behalf or prevent the sexual

12   assaults of Plaintiffs;

13   (d) acted as described herein above, in conspiracy with, and with the

14   agreement permission, ratification, and approval of, each other to violate

15   Plaintiffs' civil rights as stated herein.

16   118.   As a direct and proximate result of the aforementioned acts, omissions

17   and deliberate indifference of each of the defendants, Plaintiffs were harmed.

18   //

19   //

20   //

21

22

23

24

25

26

27

28

26

1

2

3

4

5

6

7 **PRAYER FOR RELIEF**

8 WHEREFORE, Plaintiffs pray for relief as follows against defendants:

9     1.    General and compensatory damages in an amount according to proof;

10     2.    Special damages in an amount according to proof;

11     3.    Exemplary and punitive damages against each individual and Doe

12         defendant, but not against the County or LASD, in amounts according to

13         proof;

14     4.    Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and

15     5.    Such other relief as may be warranted or as is just and proper.

16

17                           **LAW OFFICES OF ERIN DARLING**

18 DATED:  September 12, 2018

19

20                      By:    */s/ Erin Darling*

21                          Erin Darling

                         Attorney for Plaintiffs,

22                          ANGELENA SANDIFOR

                         BRENDA BLANDON

23                          JAMIE UTTERBACK

24

25                            **LAW OFFICES OF JUSTIN STERLING**

26 DATED:  September 12, 2018

27                      By:    */s/ Justin Sterling*

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Justin Sterling
Attorney for Plaintiffs,
ANGELENA SANDIFOR
BRENDA BLANDON
JAMIE UTTERBACK

1

2

**JURY DEMAND**

3    Plaintiff Angelena Sandifor, Plaintiff Brenda Blandon, and Plaintiff Jamie

4  Utterback hereby each demand trial by jury on all issues so triable.

5

**LAW OFFICES OF ERIN DARLING**

6  DATED:  September 12, 2018

7

By:   */s/ Erin Darling*

8                 Erin Darling

9                 Attorney for Plaintiffs,
                  ANGELENA SANDIFOR

10                BRENDA BLANDON

11                JAMIE UTTERBACK

12

13

**LAW OFFICES OF JUSTIN STERLING**

14  DATED:  September 12, 2018

15

By:   */s/ Justin Sterling*

16                Justin Sterling

17                Attorney for Plaintiffs,
                  ANGELENA SANDIFOR

18                BRENDA BLANDON
                  JAMIE UTTERBACK

19

20

21

22

23

24

25

26

27

28